[No. 24076. Department Two. November 29, 1932.]

THE STATE OF WASHINGTON, *Respondent*, v. ALBERT INNOCENTI, *Appellant.*[1]

[1]Reported in 16 P. (2d) 439.

*S. A. Gagliardi,* for appellant.

*Bertil E. Johnson, Fred C. Dorsey,* and *Hilton B. Gardner,* for respondent.

STEINERT, J.—This is an appeal from a judgment of conviction and sentence for the crime of "possession of intoxicating liquor with intent to sell," including also an appeal from an interlocutory order denying the petition of defendant to suppress and return certain articles of evidence seized under a search warrant.

The facts necessary to an understanding of the case are substantially these: On Saturday afternoon, August 22, 1931, at about two o'clock, A. M. Ray, a deputy sheriff of Pierce county, delivered to Blanche Funk Miller, a justice of the peace, a complaint charging "John Doe" with having and keeping intoxicating liquor at No. 2120 No. Union Ave., in Tacoma. The complaint was signed and sworn to by the deputy sheriff. A warrant was thereupon issued directing the sheriff to search the above premises, and to seize all intoxicating liquors there found, together with con-

tainers, implements, furniture and fixtures used or kept for the illegal manufacture, sale or disposition of the same. Following the issuance of the search warrant, the complaint and the warrant were both handed to Ray by the justice of the peace, the complaint to be held by Ray for safe-keeping until the next Monday morning and then to be returned to the justice of the peace at her office.

Ray, together with two Federal prohibition agents, then went to the premises above described, and, in the absence of its occupants, effected an entrance. A preliminary search revealed one hundred fifty gallons of moonshine whiskey and two gallons of wine. The officers remained on the premises until about one o'clock Sunday morning, when the defendant arrived. He was immediately placed under arrest. Thereupon, a more detailed search was made, which did not reveal any further intoxicants, but the officers did discover, and take possession of, certain books and papers of the defendant, including bank statements, checks, books of account and a copy of a lease. The sheriff retained possession of the intoxicants, and the above documents were turned over to the Federal agents.

On the following Monday morning, Ray, the deputy sheriff, delivered the complaint and search warrant, together with his official return thereon, to the office of the justice of the peace. An information was filed on August 25, 1931, charging the defendant with the crime alleged. On August 26, 1931, defendant filed in the case a petition for a writ of certiorari and order to show cause, asking that the action of the justice of the peace in issuing the search warrant be reviewed, demanding also that the officers be required to furnish a list of the documents taken by them, and that they be returned to the defendant; and further, that the evidence obtained and the information gained under

the search be suppressed. The justice of the peace, the officers above referred to, and the prosecuting attorney, were all named as additional defendants in the petition.

A writ was issued in accordance with the prayer of the petition, to which answer was made. The matter was assigned to department No. 4 of the superior court for hearing. Ray, the deputy sheriff who had been named as an additional defendant in the petition for writ of certiorari and order to show cause, filed an affidavit of prejudice against the judge in that department. Over the objection of the defendant Innocenti, a change of venue was granted. The matter was then assigned to department No. 2 of the superior court, where it was heard and an order entered in all respects denying the relief prayed for in the petition.

Thereafter, the main case came on for trial upon the information before the court, a jury having been waived by the defendant. The state introduced its evidence, the defendant resting without the introduction of any evidence. The court adjudged the defendant guilty, and imposed its sentence. The defendant has appealed.

There are six assignments of error. We will treat them in the order named.

■ Appellant first complains because the court granted a change of venue from department No. 4 on the motion of the deputy sheriff whom the defendant had made an additional defendant in his petition for writ of certiorari and order to show cause. So far as that proceeding was concerned, the additional defendant Ray was a party "appearing in such cause," and was entitled to the benefit of Rem. Comp. Stat., § 209-1.

■ But wholly aside from that, the appellant has no cause for complaint. He filed no affidavit of prejudice

against, nor made any objection to, the judge that finally disposed of the matter. He was not entitled to have his case heard before any particular judge, and he was in no way prejudiced by the assignment of the case to the department in which it was heard. An adverse result is, of itself, no ground of complaint that a fair trial has not been had.

■ The appellant next contends that there was no basis for the issuance of the search warrant, because, technically, the complaint was not then filed, but was redelivered by the justice of the peace to the deputy sheriff and retained by the latter until after the search had been made. This contention presupposes that the complaint must remain in the actual custody of the justice of the peace at all times. The law pronounces no such *fiat*. While it may be the better procedure to do this, it is not mandatory under all circumstances. There is no statute in this state which positively requires it.

The complaint had been presented to the justice of the peace at her home on a Saturday afternoon. Its purpose was to obtain the issuance of a search warrant. After its purpose had been served, it was delivered to the deputy sheriff merely for safekeeping and return on the following Monday morning. This was done, and on Monday the complaint was left at the office of the justice of the peace, whose clerk then endorsed thereon the filing mark as of Saturday, the day that it was originally presented.

In *Olympia v. Culp,* 136 Wash. 374, 240 Pac. 360, we held that it is not necessary, when a complaint is filed with a justice of the peace, that an entry thereof be made in the docket, but that it is sufficient to record the case in the docket when the crime is discovered through a search and some person is arrested and

charged therewith. The reasoning of that case supports our conclusion here.

When a paper is delivered to a proper officer to be filed, the law considers it filed when so delivered. Not even the subsequent misfeasance of the officer to whom delivery is made will affect the validity of the filing or the legal rights that flow therefrom; much less would a mere irregularity, should one occur, not amounting to a misfeasance, defeat such rights. No harm to appellant is shown to have resulted from the act of the justice of the peace, his only contention being that the complaint was never, in fact, filed. While the particular circumstances surrounding the disposition of the complaint would be proper to be considered as evidence upon the question whether or not the complaint had been actually filed, they are not to be held conclusive that it was not filed. The rule appears to be generally stated in 56 C. J. 1228:

"In some jurisdictions, under statutes providing therefor, it is held that the affidavit upon which a search warrant is issued must be filed, and must remain on file, in the office of the officer issuing the warrant. However, a search warrant will not be invalidated by reason of the fact that the issuing justice permitted the affidavit, upon which the warrant was based, to be taken from his office, no harm being claimed thereby. Moreover, it is claimed that it is not required that the magistrate shall have recorded the fact of the filing. Although a statute requires justices of the peace to keep a docket in which they shall record the proceedings held before them, it is not required that the justices record in their dockets complaints upon which search warrants issue. It is held in some jurisdictions that the failure of the issuing officer to file the application for a search warrant, or to record the finding of probable cause for issuance, or to record the issuance of the warrant in his docket, is merely a neglect of a ministerial duty which will not render the search warrant invalid."

The following cases support the rule and the holding we herein express: *Mowlan v. State*, 197 Ind. 517, 151 N. E. 416; *Goodman v. State*, 201 Ind. 189, 165 N. E. 755; *Mahnken v. Meltz*, 97 N. J. L. 159, 116 Atl. 794; *Gallagher v. Linwood*, 30 N. Mex. 211, 231 Pac. 627, 37 A. L. R. 664; *Reeder v. Mitchell*, 117 Okla. 21, 244 Pac. 773.

■ Appellant next assigns as error the court's refusal to return to him the property taken, other than the intoxicating liquor. The trial court was of the opinion that appellant's only remedy was by replevin. The prosecuting attorney contends that the court's ruling was correct, for two reasons: (1) because the officers had the right to take the property, and (2) because, at the time of the hearing, it appeared that the property was beyond the control of the sheriff, and was in the possession of the United States government.

Upon the first point, it is to be remembered that the documents constituting the property sought to be returned were discovered and seized *after* appellant's arrest. Search and seizure of these articles were not made by virtue of the search warrant itself, but in pursuance of the rule, or right, existing in this state, which permits an officer making an arrest to search the person arrested, and also the premises, if the arrest is made thereon, for the discovery of articles that may reasonably be used as evidence of the crime. In *State v. Evans*, 145 Wash. 4, 258 Pac. 845, we said at p. 13:

"In so far as our examination of the cases has extended, all of the cases hold, even those which adhere most strictly to the rule that evidence obtained by an unlawful search is inadmissible as evidence, that, where the accused is arrested in his home, or place of residence, a search of the home or place of residence may be lawfully made for evidence of his guilt. In this instance, the defendant was on his way to his

place of residence when arrested, and the fact that he was caught before he reached the place ought not to require the application of a different rule."

The following cases also support the rule: *State v. Beaupre,* 149 Wash. 675, 272 Pac. 26; *State v. Blight,* 150 Wash. 475, 273 Pac. 751.

■ These documentary articles were competent as evidence to show that the appellant was the owner, and in possession, of the premises described. *May v. U. S.,* 199 Fed. 53; *Adams v. New York,* 192 U. S. 585, 48 L. ed. 575; *Marron v. U. S.,* 274 U. S. 727, 72 L. ed. 191.

■ We do not, however, agree with the second contention of the prosecuting attorney, nor do we think that appellant's only remedy, if he had any remedy at all under the circumstances, was by replevin. The Federal officers held no search warrant; they were there at the invitation of the deputy sheriff. So far as the record discloses, no Federal case was pending against appellant, nor was the property taken placed in the custody of the prohibition administrator, nor with any other officer charged with the custody of evidence in prohibition cases.

If the deputy sheriff had no right to take or hold these documents, then appellant's right to a return of them could not be defeated by the asserted fact that they had been turned over to some one else. We do not approve any such makeshift. Rather do we incline to say that, if this had been the only reason for withholding the return of the property, the court, in the proceeding before it, had full authority to order its return. Furthermore, we think that the disposition of the property taken under such circumstances, must be justified, to the satisfaction of the court, by the parties responsible therefor, or else its further prac-

294

tice should be discouraged by a proper order in the particular case. We hold in this case, however, that the property was rightfully taken, and that the order denying its return was properly made.

■ Appellant further argues under this assignment that it was wholly unnecessary for the officers to seize and take the documentary articles, because at the time of his arrest he offered to plead guilty. What the appellant offered to do when arrested was no guaranty of what he would do when arraigned. Had the appellant pleaded guilty, this case would not be here. Subsequent events emphasized, rather than negatived, the necessity for the precautions taken by the officers. While the documentary evidence was not used at the trial, this was simply because, in the progress of the case, sufficient evidence to support a conviction was disclosed.

■ Appellant's next assignment of error is that the court erred in denying him the right to inquire into the method and practice of the justice of the peace in issuing blank search warrants to be used by the sheriff as occasion required. The court held that any proof which would have the tendency to show that the search warrant in question was so issued, was competent, but sustained an objection to proof of search warrants in other cases. The element of intent was not involved; it was simply a question of fact with reference to the particular search warrant. There was ample evidence on the part of the state that the warrant was regularly issued, and there was no evidence to the contrary, except possibly the inference that appellant attempted to raise from the practice followed in other cases.

In this connection, it may be said that a great deal of evidence was offered by the appellant to the effect that the justice of the peace had, on other occasions,

issued search warrants in blank and delivered them to the sheriff for use as the occasion and exigencies demanded, and we think that the record discloses that, at times, such was the practice followed. This evidence was rejected by the court, but in order that there may be no misunderstanding as to our position with reference to such a situation, were it properly before us, and lest we be understood by our silence as condoning the practice, we now say unqualifiedly that, if such practice still exists, we condemn it. The best way to instill respect for the law in those against whom it is sought to be enforced, is for those who execute the law to likewise respect it.

Appellant's final assignment of error is in the admission in evidence of the liquor obtained from appellant's dwelling house. This evidence was so clearly admissible that the assignment merits no discussion thereon.

The judgment and order are both affirmed.

TOLMAN, C. J., MAIN, HERMAN, and BEALS, JJ., concur.