Ronald S. McINNIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 883–82.

Court of Criminal Appeals of Texas,
En Banc.

June 15, 1983.

Marian S. Rosen, Mary M. Rawlins, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Timothy G. Taft and Jim Lavine, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

The First Court of Appeals of Houston ordered appellant's conviction reversed. It held that: (1) affidavits for a search warrant and an arrest warrant were invalid, and (2) a photograph depicting a used condom was erroneously admitted into evidence, and such was not harmless error. See McInnis v. State, 634 S.W.2d 912 (Tex. App.—Houston [1st] 1982). We granted the State's petition for discretionary review to make the determination whether the Court of Appeals correctly ordered appellant's conviction reversed. Finding that the Court of Appeals incorrectly reversed the conviction, we will reverse and remand the cause so that appellant's other unresolved contentions may be considered and ruled upon.

The record of appeal reflects that on August 13, 1980, two Houston police vice officers went to a theatre in Houston. After

paying the admission price to appellant, who was then working at the theatre in the capacities of cashier and projectionist, the officers entered the theatre, and thereafter viewed in its entirety the movie film entitled "Inside Desiree Cousteau." After viewing the film the officers concluded that it was obscene. The next day, August 14, 1980, one of the officers obtained a search warrant from a magistrate. The search warrant authorized the police to seize, among other things, the above movie film. During the early morning hours of August 16, 1980, after all patrons had left the theatre, and without appellant being present, police officers executed the search warrant, seizing, among other things, the above film.

On August 18, 1980, another magistrate issued a warrant for the arrest of "FNU LNU," which is an abbreviation for the words "first name unknown, last name unknown." At the time the police obtained the warrant of arrest, they did not have appellant's true name, but only had his physical description.

The details of appellant's arrest were developed outside the presence of the jury. On August 25, 1980, when a police officer was endeavoring to execute the arrest warrant, he came into contact with a person, appellant, who matched the physical description of the person he was seeking to arrest. The officer asked for and received from appellant his driver's license. Appellant's physical appearance, together with the information on his driver's license, and the physical description the officer had, led the officer to conclude that appellant was the person he was seeking to arrest. Appellant was then formally arrested.

Although the jury was not made aware of the details of appellant's arrest, the record does reflect the jury was made aware of the fact of the arrest through unobjected to testimony from both witnesses for the State and the appellant, including appellant himself.

The Court of Appeals held that the arrest and search warrants should not have issued because the underlying affidavits did not contain sufficient facts to constitute proba-ble cause, either to arrest appellant or to search for and seize, among other things, the above movie film. We find that it was unnecessary for the Court of Appeals to have addressed the question whether the affidavits stated sufficient probable cause facts.

■ Regardless of the validity of the affidavit for the arrest warrant, before appellant may complain of his arrest he must demonstrate and establish how he was harmed by the arrest. *Colston v. State,* 470 S.W.2d 890 (Tex.Cr.App.1971). In this instance, appellant has never contended or established that he was harmed because of the arrest. The facts here are unlike those found in *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). There, the defendant was convicted for violating a municipal ordinance which required the showing of identification upon a lawful stop. The Supreme Court held that the application of the ordinance to the defendant violated the Fourth Amendment because there were no objective facts to support reasonable suspicion that the defendant had or was in the process of violating any law. In this instance, however, the police reasonably suspected that appellant had engaged in illegal activity, and the request for identification by the arresting officer was merely to confirm that appellant was the person he was seeking to arrest.

■ It was also unnecessary for the Court of Appeals to consider whether the affidavit for the search warrant was legally sufficient. Before appellant was entitled to complain of the search warrant, or its execution, he had to establish that he had standing to complain. *Goehring v. State,* 627 S.W.2d 159, 164 (Tex.Cr.App.1982). We find appellant has not established, either directly or indirectly, that he has standing to complain of the search warrant or its execution.

Appellant was not charged with committing a possessory type criminal offense; instead, he was charged with exhibiting an obscene movie film. He was only an em-

ployee of the corporation which owned the theatre, working at the theatre in the capacities of cashier and projectionist. There is no evidence to show that he had any financial, proprietary, possessory, or other interest in the theatre or in anything located inside of the theatre, such as the movie film and the other items that were seized pursuant to the search warrant. In this instance, it matters not whether we apply the "automatic standing" test first stated in the Supreme Court decision of *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1950), or the "legitimate expectation of privacy test" enunciated in the Supreme Court decision of *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), because under either test appellant has not established that he has standing to complain of either the search warrant or its execution.

▮ Although we have disapproved of the Court of Appeals discussing what it did not have to discuss, we do find ourselves in agreement with its holding, and the reasons therefor, that the trial court committed error by admitting into evidence a photograph depicting a used condom. The photograph was taken at some point in time on August 15, 1980, when the search warrant was being executed, at which time appellant was not present in the theatre. In fact, the record does not reflect that appellant was ever in the theatre the entire day of August 15, 1980, and probably had not been in the theatre since he last worked on August 14, 1980. Also, there is absolutely nothing in this record to establish a connection between appellant, or anyone else for that matter, and the used condom. There is no evidence in this record which would indicate how long the used condom may have been inside the theatre before it was photographed by one of the police officers who participated in the execution of the search warrant. The jury should not have been permitted to view the photograph or to hear any testimony concerning the seizure of the used condom. Nevertheless, after carefully reviewing the entire record of the trial, we are constrained to hold that because of what appellant was accused of committing,

exhibiting an obscene movie film more than 24 hours prior to the time the search warrant was executed, and the facts of this case, the error was harmless, both as to the finding of guilt and the assessment of punishment.

The judgment of the Court of Appeals is reversed, and the cause remanded to that court for it to address appellant's other grounds of error.

ONION, P.J., and CLINTON and MILLER, JJ., dissent.